**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

———————————————————————

|  |  |  |
|---|---|---|
| ELIZABETH A. MARCZESKI | : | CIVIL ACTION NO. 3:02CV00894(SRU) |
|  | : |  |
| Plaintiff | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| WILLIAM GAVITT | : |  |
| AND WILLIAM DITTMAN | : |  |
|  | : |  |
| Defendants. | : | JUNE 1, 2004 |
|  | : |  |

———————————————————————

## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56(c), the defendants, Deputy Chief William Gavitt and Captain William Dittman, respectfully move for summary judgment with respect to plaintiff's pending claim.  Plaintiff's only remaining claim is a cause of action under 28 U.S.C. 1983, wherein she alleges that the defendants have retaliated against her because she filed a prior federal lawsuit against them.  The undisputed facts make clear, however, that the plaintiff cannot prove her claim of retaliation against Deputy Chief Gavitt or Captain Dittman.  Thus, for the reasons more fully set forth in the accompanying Memorandum of Law, summary judgment should be awarded in favor of the defendants.

WHEREFORE, for the foregoing reasons, the defendants respectfully request that the Court enter

Summary Judgment on plaintiff's remaining claim in favor of the defendants.

DEFENDANTS,
WILLIAM GAVITT
AND WILLIAM DITTMAN


By:_____
JAMES N. TALLBERG, ESQ.
Federal Bar Number ct 17849
Updike, Kelly & Spellacy, P.C.
One State Street
Hartford, CT 06123-1277
Tel. (860) 548-2600

## CERTIFICATION

A copy of the foregoing has been mailed by first class mail, postage prepaid, this _____ day of June

2004 to:

Elizabeth A. Marczeski
206 B Nautilus Drive, #104
New London, CT 06320

By:_____
         JAMES N. TALLBERG, ESQ.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                          :
ELIZABETH A. MARCZESKI                    :     CIVIL ACTION NO. 3:02CV00894(SRU)
                                          :
          Plaintiff                       :
                                          :
   v.                                     :
                                          :
WILLIAM GAVITT                            :
AND WILLIAM DITTMAN                        :
                                          :
          Defendants.                     :     JUNE 1, 2004
_____  :

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56(c), the defendants, Deputy Chief William Gavitt and Captain William Dittman, respectfully move for summary judgment with respect to plaintiff's remaining claim that the defendants retaliated against her for exercising her First Amendment Rights.  The undisputed facts make clear, that the plaintiff cannot prove her retaliation claim.  The plaintiff has no evidence that either defendant took any retaliatory action against her.  Moreover, she cannot demonstrate an actual chilling of her First Amendment Rights.  Thus, for the reasons more fully set forth in the accompanying Memorandum of Law, summary judgment should be awarded in favor of the defendants.

## UNDISPUTED FACTS

The plaintiff, Elizabeth Marczeski, resides in an apartment at 206B Nautilus Drive Apartment 104 in New London, Connecticut.  Deposition of Elizabeth A. Marczeski, dated September 9, 2003, at 14 ("Marczeski Dep.") (attached to Defendant's Motion for Summary Judgment as Exhibit A).  On June 28, 1998, Ms. Marczeski was arrested by the New London Police Department on a charge of harassment in the second degree.  Affidavit of William Gavitt, dated June 1, 2004, ¶ 4 ("Gavitt Aff.") (attached to Defendant's Motion for Summary Judgment as Exhibit B).  Ms. Marczeski was arrested pursuant to a warrant obtained by Captain William Dittman of the New London Police Department.  Affidavit of William Dittman, dated June 1, 2004, ¶ 4 ("Dittman Aff.") (attached to Defendant's Motion for Summary Judgment as Exhibit C).  Captain Dittman obtained the warrant after conducting an investigation into complaints about Ms. Marczeski that he received from Diana Law of Colorado Springs, Colorado.  Dittman Aff. ¶ 4.

After her arrest, Ms. Marczeski was adjudged incompetent to stand trial on the harassment charge and was committed to Connecticut Valley Hospital.  Dittman Aff. ¶ 6.  After her hospitalization, Ms. Marczeski filed a lawsuit in the District Court for the District of Connecticut against Diana Law, Captain Dittman, Deputy Chief Gavitt, and other individuals, including other members of the New London Police Department (the "Kamba Action").  Dittman Aff. ¶ 7.  In the Kamba Action, Ms. Marczeski claimed that the defendants Dittman and Gavitt, among others, violated her civil rights and liberties, harassed and intimidated her, coerced her, libeled and slandered her with statements that she was mentally ill, threatened

to arrest and engaged in wrongful search and seizure.  Dittman Aff. ¶ 8.  All of Ms. Marczeski's claims against Captain Dittman and Deputy Chief Gavitt were dismissed with prejudice.  Dittman Aff. ¶ 9.

Ms. Marczeski then brought the present action alleging that in retaliation for her filing the Kamba Action, Captain Dittman and Deputy Chief Gavitt have stalked and harassed her.[1]  Amended Compl. ¶ 18.  Contrary to Ms. Marczeski's allegation that Deputy Chief Gavitt has stalked or harassed her, Deputy Chief Gavitt has never visited Ms. Marczeski's apartment.  Gavitt Aff. ¶ 9.  Deputy Chief Gavitt has never followed or approached Ms. Marczeski.  Gavitt Aff. ¶ 10.  Moreover, subsequent to her filing of the Kamba Action, Deputy Chief Gavitt has not had any contact with Ms. Marczeski, whatsoever.  Gavitt Aff. ¶ 11.  Likewise, subsequent to her filing Kamba Action, Captain Dittman has not visited Ms. Marczeski's apartment.  Dittman Aff. 10.  Subsequent to Ms. Marczeski's filing of the Kamba Action, Captain Dittman has not followed or approached Ms. Marczeski.  Dittman Aff. ¶ 11.  Subsequent to Ms. Marczeski's filing of the Kamba Action, Captain Dittman has not had any contact with Ms. Marczeski, whatsoever.  Dittman Aff. ¶ 12.

Ms. Marczeski admitted as much in her deposition:

> Q.     Am I correct, though, just so the record is clear, that you've never seen Captain Dittman or Deputy Chief Gavitt following you around in a police car?
>
> A.     No.

---

[1] Ms. Marczeski asserted several other claims in her Amended Complaint, including other incidents of police harassment, false arrest, and failure to act on the part of the New London Police Department.  Each of these claims was dismissed by this Court upon consideration of the Defendants' Motion to Dismiss.  Marczeski v. Brown, No. 3:02CV894 (GLG), Opinion, dated Nov. 21, 2002.  Ms. Marczeski's only claim that survived the Motion to Dismiss is her claim of stalking, harassment and trespass in retaliation for filing the Kamba Action.  This claim is directed toward only Captain Dittman and Deputy Chief Gavitt.

> Q.     Mr. Dittman hasn't been to your apartment since before your June 24, 1998 arrest, is that correct?
>
> A.     No.

Marczeski Dep. at 61.

Moreover, Ms. Marczeski kept a log of each instance in which she was allegedly harassed or stalked by members of the New London Police Department.  Marczeski Dep. at 67.  Ms. Marczeski admits that the facts that support her claim of retaliation by Deputy Chief Gavitt and/or Captain Dittman are limited to the incidents in the log.  Marczeski Dep. at 75.  Yet, she also admits that none of the log entries say anything regarding Captain Dittman or Deputy Chief Gavitt:

> Q.     There's no documentation . . . in that log about any alleged harassment by Mr. Gavitt or Mr. Dittman . . . correct?
>
> A.     Correct.

Marczeski Dep. at 71.

Since the filing of the Kamba Action, the New London Police Department has dispatched officers to 206 Nautilus Drive.  Affidavit of Michael Lacey, dated June 1, 2004, ¶ 6 ("Lacey Aff.") (attached to Defendants' Motion for Summary Judgment as Exhibit D).  206 Nautilus Drive, however is a large apartment complex, with several individual units.  Lacey Aff. ¶ 6.  From 1999 through 2002, the New London Police Department investigated numerous complaints by and about the residents of 206 Nautilus Drive.  Lacey Aff. ¶ 7  These complaints varied in nature and included complaints regarding noise, parking, suspicious persons, larceny, animal complaints, drug sales, domestic violence, criminal mischief, and in

one case, a dead body. Lacey Aff. ¶ 11. In short, throughout 1999 through 2002, the members of the New London Police Department were dispatched to 206 Nautilus Drive on several occasions to investigate incidents that did not involve Ms. Marczeski. Lacey Aff. ¶ 12.

The New London Police Department records indicate that police have been dispatched to deal directly with Ms. Marczeski on only two occasions since Ms. Marczeski filed her first lawsuit, and in both cases, it was Ms. Marczeski who contacted the police. Lacey Aff. ¶ 12. On June 19, 2001, Ms. Marczeski called the New London Police to complain that she had been assaulted by a neighbor, Daniel Sligar. Lacey Aff. ¶ 13. New London police officers, other than Captain Dittman and Deputy Chief Gavitt, were dispatched to the scene. Lacey Aff. ¶ 14 Mr. Sligar was arrested, charged with assault, and ultimately sentenced to thirty (30) days in prison as a result of the incident. Lacey Aff. ¶ 15. On April 6, 2003, Ms. Marczeski called the New London Police Department to make a complaint with respect to another neighbor, Laura Charlton. Lacey Aff. ¶ 17. Again, New London police officers, other than Captain Dittman and Deputy Chief Gavitt, were dispatched to the scene. Lacey Aff. ¶ 20. Ms. Marczeski claims that New London Police Officers visited her apartment on two other occasions, but with respect to this claim, she acknowledges that she was the person who telephoned the police and that the defendants, Captain Dittman and Deputy Chief Gavitt, did not respond to either call. Marczeski Dep. at 85-89.

Finally, with respect to Ms. Marczeski's claims that she is being stalked and/or harassed by the New London Police Department, it should be noted that Ms. Marczeski's apartment complex is located only two and a half miles away from the New London Police Station. Dittman Aff. ¶ 17. Given the proximity between Ms. Marczeski's home and the police station, it is reasonable to believe that Ms. Marczeski would

see or inadvertently encounter officers of the New London Police Department on a fairly regular basis. Dittman Aff. ¶ 18.

Based on these undisputed facts, Ms. Marczeski cannot sustain a cause of action for stalking, harassment or trespass by the defendants in retaliation for filing the Kamba Action. Accordingly, for the reasons detailed below, summary judgment should be entered in favor of Captain Dittman and Deputy Chief Gavitt.

## ARGUMENT

A motion for summary judgment should be granted if the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); see generally Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970); Cronin, 46 F.3d at 202.

The Second Circuit has ruled that "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985). Instead, "*the plaintiff must offer concrete evidence raising genuine disputes of material fact tending to show that his version of events is more than fanciful.*" Johnson v. Carpenter Technology Corp., 723 F. Supp. 180, 182 (D. Conn. 1989) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

**I.      PLAINTIFF CANNOT PRODUCE ANY EVIDENCE TO SUPPORT A FIRST AMENDMENT RETALIATION CLAIM AGAINST THE DEFENDANTS.**

In order to survive summary judgment on his First Amendment retaliation claim, Ms. Marczeski must show that (i) she has an interest protected under the First Amendment, (ii) that the defendants took adverse action against her, (iii) that the defendant's adverse actions were motivated by or substantially caused by the plaintiff's exercise of that right, and (iii) the defendants['s] actions chilled the exercise of those rights. Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003); Kerman v. City of New York, 261 F.3d 229, 241-42 (2d Cir. 2001). Ms. Marczeski has offered no evidence to demonstrate that defendants Gavitt and Dittman took any adverse action against her. Moreover, she cannot offer any evidence demonstrating that her rights under the First Amended have been chilled as a result of the defendants' conduct. For these reasons, summary judgment must be granted in favor of Captain Dittman and Deputy Chief Gavitt.

**A.      Plaintiff Has No Evidence of Adverse Acts By the Defendants.**

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Dawes v. Walker, 239 F.2d 489, 493 (2d Cir. 2001). "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." Id.

In her Amended Complaint, Ms. Marczeski claims that the officers took adverse action against her by harassing her, stalking her and trespassing on her property.[2]  Ms. Marczeski has no evidence to support such a claim.  In the present case, plaintiff has offered no evidence to support a claim that Captain Dittman and/or Deputy Chief Gavitt had any contact with her whatsoever, let alone took any "adverse action" towards her.  Contrary to the plaintiff's allegation that the defendants stalked and harassed or trespassed on her property, Ms. Marczeski admitted that the named defendants had no contact with her.

> Q.    Am I correct, though, just so the record is clear, that you've never seen Captain Dittman or Deputy Chief Gavitt following you around in a police car?
>
> A.    No.
>
> Q.    Mr. Dittman hasn't been to you apartment since before your June 24, 1998 arrest, is that correct?
>
> A.    No.

Marczeski Dep. at 61.

---

[2] Ms. Marczeski apparently attempted to plead a separate state law cause of action for common law trespass.  However, in deciding the merits of the Motion to Dismiss, this Court held that Ms. Marczeski's trespass claim is part of her retaliation claim.  The court noted that the trespass allegation "will not be dismissed to the extent that it is part of the plaintiff's retaliation claim."  Opinion, dated Nov. 21, 2002, at 15.  However, the Court held that "in all other respects it is dismissed for failure to state a claim".  Id. Accordingly, this present motion for summary judgment need not address trespass as an independent cause of action.  To the extent that it might be considered as such, the trespass claim should be dismissed because it is derivative of plaintiff's federal claim, which fails for the reasons outlined herein.  A. Aiudi & Sons v. Plainville, 862 F. Supp. 737, 745 (D. Conn. 1994).  Moreover, in each instance in which the New London police officers, other than defendants Gavitt and Dittman were in Ms. Marczeski's apartment, they had been called by Ms. Marczeski and thus had permission to be on her property.  Because Ms. Marczeski consented to their presence on her property, she cannot sustain a state law trespass claim.

Plaintiff's admission is confirmed by the sworn statements of Captain Dittman and Deputy Chief Gavitt. Both defendants assert that after Ms. Marczeski filed the Kamba action they had no contact with the plaintiff. Neither visited her apartment and neither followed or approached Ms. Marczeski. Ms. Marczeski has offered no evidence to contradict these assertions, and in fact agreed with them at her deposition. Because the undisputed evidence demonstrates that the individual defendants had no contact with the plaintiff, let alone that they took adverse action against her by stalking or harassing her, or by trespassing on her property, Ms. Marczeski's retaliation claim against these defendants cannot survive summary judgment.

Moreover, Ms. Marczeski admits that the only alleged evidence of the defendant' alleged retaliation is her log indicating her various alleged encounters with the New London Police Department since she filed the Kamba Action. Ms. Marczeski admitted at her deposition that none of the entries on the log refer or relate to Captain Dittman or Deputy Chief Gavitt. Accordingly, this evidence cannot support a retaliation claim against these particular defendants.

Even if Ms. Marczeski's log demonstrates some contact with New London police officers, other than the defendants, any contact she had with the police does not support a claim for stalking, harassment or trespass. First, the two incidents where police reports actually document contact between Ms. Marczeski and members of the New London Police Department arose out of instances in which Ms. Marczeski contacted the New London police in need of assistance, and the department responded by sending officers to the scene. In one case Ms. Marczeski claimed to be the victim of assault and the New London police came to her aid and arrested the suspect. In the second, Ms. Marczeski took no action against her neighbor,

Laura Charlton, the subject of her complaint, and actually received a thank you note from Ms. Charlton expressing her appreciation for not pressing charges. Moreover, in the other two incidents in which the New London police allegedly visited Ms. Marczeski's apartment, she admits that she had called them there.

With respect to the log entries detailing when Ms. Marczeski allegedly encountered police at or near her apartment complex, Ms. Marczeski's proximity to the police station makes it reasonably likely that in the time period since she filed the Kamba Action, she would have encountered the police. Similarly, in the time since the filing of the Kamba Action, the New London police responded to numerous calls by and about the residents of Ms. Marczeski's apartment complex that had absolutely nothing to do with her. In short, Ms. Marczeski cannot demonstrate harassment, stalking or trespass by the either defendants or any member of the New London police department.

### B.    Plaintiff Cannot Demonstrate a Chilling of the First Amendment Rights.

Moreover, Ms. Marczeski cannot demonstrate that her First Amendment rights were chilled as a result of the defendants' alleged conduct. In order to satisfy this element of her retaliation claim, Ms. Marczeski must demonstrate that her First Amendment Rights were "actually chilled." Davis v. Vill. Park II Realty Co., 578 F.2d 461, 464 (2d Cir. 1978). The Supreme Court has held that "allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Laird v. Tatum, 408 U.S. 1, 13-14 (1972). "Where a party can show no change in [her] behavior, [she] has quite plainly shown no chilling of [her] First Amendment right to free speech." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

Ms. Marczeski alleges that she has been retaliated against for filing the Kamba Action. "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 734 (1983). However, Ms. Marczeski cannot demonstrate that there has been any chilling of her First Amendment right to access the courts. The undisputed facts demonstrate that despite any alleged retaliation by the defendants, Ms. Marczeski has continued to seek redress through the courts, even after the alleged retaliation began. Ms. Marczeski pursued the Kamba Action ultimately until the case was dismissed. She did not withdraw the case or decline to pursue the action. Not only did Ms. Marczeski pursue the Kamba Action, but she filed the present action against many of the same defendants asserting many of the same claims. She cannot now assert that the actions of the defendants have chilled her exercise of her right to seek redress in the courts. Accordingly, she cannot satisfy this element of a First Amendment retaliation claim, and summary judgment should be awarded to the defendants.

## II.    THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Even if the plaintiff has stated a claim that her constitutional rights were violated, a proposition that the defendants dispute, the defendants are entitled to qualified immunity. The qualified immunity defense protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As such, "qualified immunity is an entitlement not to stand trial or face the burdens of litigation." Id. (internal quotations omitted); Michell v. Forsyth, 472 U.S. 511, 526 (1985). "The doctrine protects

public officials from the risk of potentially ruinous monetary liability which would deter qualified people from public service and safeguards the public interest in having government employees act with independence and without fear of consequences." Warmouth v. Johannes, No. 3:97-CV-1980, 1999 U.S. Dist. LEXIS 2728, at *5 (D. Conn. Feb. 23, 1999) (attached as Exhibit E to Defendants Motion for Summary Judgment); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).

"Because the defense of qualified immunity is designed to relieve government officials of the burdens of litigation as well as the threat of damages, summary judgment is encouraged as a device for disposing of claims barred by such immunity." In Re State Police Litigation, 88 F.3d 111, 123 (2d Cir. 1996); see also Harlow, 457 U.S. at 818; Behrens v. Pelletier, 516 U.S. 299, 308 (1996); Lee v. Sandberg, 136 F.3d 94, 101 (2d Cir. 1997); Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir. 1992). To establish this defense at the summary judgment stage, "the officers must show upon facts that are undisputed either that their conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was objectively reasonable to believe that their acts did not violate those clearly established rights." Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir. 1993) (internal quotations omitted). A defendant is entitled to summary judgment when "no reasonable jury looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that is was objectively unreasonable for the defendant to believe that he was acting in a manner that did not clearly violate an established right." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (quoting Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987)).

The defense of qualified immunity shields a police officer from liability for damages on account of his performance of discretionary official functions if (a) the officer's actions did not violate clearly established law, or (b) it was objectively unreasonable for the officer to believe that his actions did not violate such law.  See Anderson v. Creighton, 483 U.S. 635, 641 (1987).  "Generally, an officer's actions are considered objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." Williams v. Lopes, 64 F. Supp. 2d 37 (D. Conn. 1999) (quotations omitted).  Simply stated, the test for qualified immunity is an objective one.  Reese v. Garcia, No. 3:99-CV-1436, 2000 U.S. Dist. LEXIS 14457, at *31 (D. Conn. Sept. 27 2000) (attached as Exhibit F to Defendants Motion for Summary Judgment).

In the present case, for the reasons discussed above, the conduct of Captain Dittman and Deputy Chief Gavitt were objectively reasonable.  In fact, these defendants avoided all contact with Ms. Marczeski after she filed the Kamba Action.  It cannot be said, then, that the actions they took toward Ms. Marczeski are unreasonable.  Accordingly, the defendants are entitled to qualified immunity on Ms. Marczeski's retaliation claim.  Moreover, the actions taken by the New London Police Department in dealing with Ms. Marczeski were objectively reasonable.  The only intentional conduct directed at Ms. Marczeski was the department's response to two emergency calls placed by Ms. Marczeski herself, seeking assistance from the police.  Officers, other than the defendants, responded to the scene and responded to Ms. Marczeski's complaints, in one case arresting and individual for assaulting her.  Because at all times the defendants, and other members of the New London Police Department acted in an objectively reasonable manner, the qualified immunity doctrine should shield the defendants from liability.

## **CONCLUSION**

For the foregoing reasons, the defendants should be awarded summary judgment on all plaintiff's remaining claims.

DEFENDANTS,
WILLIAM GAVITT
AND WILLIAM DITTMAN


By:_____
    JAMES N. TALLBERG, ESQ.
    Federal Bar Number ct 17849
    Updike, Kelly & Spellacy, P.C.
    One State Street
    Hartford, CT 06123-1277
    Tel. (860) 548-2600

364208

## **CERTIFICATION**

A copy of the foregoing has been mailed by first class mail, postage prepaid, this _____ day of June

2004 to:

Elizabeth A. Marczeski
206 B Nautilus Drive, #104
New London, CT 06320


By:_____
       JAMES N. TALLBERG, ESQ.