# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ELIZABETH MARCZESKI,        :
     Plaintiff,           :
                          :
     v.                      :         No. 3:02cv894 (SRU)
                          :
WILLIAM GAVITT and WILLIAM     :
DITTMAN,                   :
     Defendants.        :

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

Elizabeth Marczeski has sued two members of the New London Police Department, Deputy Police Chief William Gavitt and Captain William Dittman. She is proceeding *pro se*. Marczeski alleges that the defendants trespassed on her property and harassed and stalked her in retaliation for her filing a previous lawsuit. She seeks redress under 42 U.S.C. § 1983 for their alleged violation of her First Amendment rights. The defendants have moved for summary judgment. Marczeski has filed a cross-motion for summary judgment and a motion to compel.[1]

Because Marczeski has not brought forth evidence to support each of the required elements of a *prima facie* case of First Amendment retaliation, the defendants' Motion for Summary Judgment is GRANTED. Marczeski's Motion for Summary Judgment and Motion to Compel are DENIED.

---

[1] Oral arguments were scheduled for January 18, 2005. At the plaintiff's request, they were postponed. I had prepared the case in anticipation of the January 18 hearing and conclude that I am able to rule on the motions without hearing oral arguments. I have, however, considered Marczeski's most recent submission, which was filed on January 26, 2005.

I.      **Background**

    A.      Procedural Background

In 1998 Marczeski was arrested for harassment in the second degree.  She was found

mentally incompetent to stand trial on that charge and was committed to the Connecticut Valley

Hospital.

    After her hospitalization Marczeski filed suit ("the Kamba action") against Diana Law,

whose complaints had led to her arrest; Dittman, who obtained the warrant for her arrest; Gavitt;

and others, including other members of the New London Police Department.  *See Marczeski v.*

*Kamba, et al.*, No. 3:99cv2479 (AWT).  In that case, Marczeski alleged that Dittman, Gavitt, and

others intimidated her, coerced her, libeled and slandered her, threatened to arrest her, and

engaged in wrongful search and seizure.  All of Marczeski's claims against Dittman and Gavitt

were dismissed with prejudice.

    Marczeski then brought the present action alleging that Dittman and Gavitt have stalked

and harassed her and trespassed in retaliation for her filing the Kamba action.  Marczeski also

named a third defendant, Richard Brown, the City Manager of New London.  Her amended

complaint contained other allegations, including claims of police harassment, false arrest, failure

to act, defamation, and intentional infliction of emotional distress.  The court previously

dismissed all claims other than the First Amendment retaliation claim against Dittman and

Gavitt.  *Marczeski v. Brown, et al.*, No. 3:02cv894 (GLG) (D. Conn. Nov. 21, 2002) (doc. # 21).

    Marczeski has filed numerous pleadings, including an opposition to the defendants'

motion for summary judgment.  She has also attached calendars, a log of police activity, an

affidavit by Norma Sligar, copies of her medical records and newspaper articles about New

London police officers.  Additionally, Marczeski was deposed by the defendants, and portions of her deposition testimony have been filed as an exhibit to the defendants' motion.  Although she may deny the following facts, her pleadings contain no evidence to dispute them.

      B.    <u>Undisputed Facts</u>

In the summer of 1998, Marczeski was arrested by the New London Police Department and charged with second-degree harassing.  Dittman obtained a warrant for her arrest after conducting an investigation into complaints received from Diana Law.  Marczeski was found incompetent to stand trial and was committed to the Connecticut Valley Hospital.

Marczeski noted on a calendar and maintained a log of instances in which she was allegedly harassed or stalked by members of the police department.  She has admitted that the facts that support her claim of retaliation by Gavitt and Dittman are limited to the incidents in the log.  She also admitted that there is no documentation in the log about any alleged harassment by Gavitt or Dittman.[2]  (Marczeski Dep. at 71.)

Throughout the relevant time period, the New London Police Department investigated numerous complaints by and about residents of 206 Nautilus Drive, the apartment complex where Marczeski resides.  On two occasions, police officers have been dispatched to deal directly with Marczeski since she filed this lawsuit.  Both times she contacted the police.  Neither of the defendants were dispatched or went to Marczeski's apartment on those occasions.  Marczeski

---

[2] The log, which was attached to Marczeski's  Memorandum in Support of Summary Judgment (doc. # 39), included one notation relating to Dittman.  That incident ("Dittman called police who came to my apt and wanted to talk to a Keith Ibbitson who has a phone in his name in my apt. 10 pm") was dated July 7, 1999, prior to the filing of the Kamba action (December 20, 1999).  The encounter with Dittman could not, therefore, be retaliatory with respect to Marczeski's filing of that lawsuit.

claims that New London police officers visited her apartment on two further occasions, but acknowledges that she first telephoned the police and that neither Dittman nor Gavitt responded to either call.

The defendants have submitted a log of dispatches to Marczeski's apartment complex and details of the two incidents since June 1998 when Marczeski contacted the police department to make reports.

     C.    <u>Disputed Facts</u>

In her deposition, Marczeski mentioned a conversation with Dittman that took place after the June 1998 arrest. She testified that in response to her question, "Why do you lie so much, Dittman?" Dittman replied, "Well, we're all going to lie, Liz. We're all – because we can get away with it." (Marczeski Dep. at 60-61.) She also mentions other conversations with Dittman and/or Gavitt, following the arrest, but acknowledges that *she* placed the phone calls. *Id.* at 70.

Marczeski testified to other encounters with police officers and occasions when she has spotted police vehicles following her, but did not identify Dittman or Gavitt. Additionally, she has introduced the affidavit of Norma Sligar, a neighbor, to support her allegation that New London police officers regularly follow her.

After acknowledging that her log contained no accounts of harassment by Gavitt or Dittman, Marczeski testified: "However, Mr. Gavitt is a deputy chief officer, and he's the one that takes care of the complaint, which he shoves under the table all the time." *Id.* at 71.

Marczeski's filings contain various broad allegations, including claims that Gavitt ordered other officers to follow her; that her upstairs neighbor is involved in a conspiracy and has tapped her phone, stolen her identity, and sees everything she does; and that the defendants have

-4-

posted her photograph to a police station bulletin board. She has not introduced any evidence to support these allegations.

In sum, the only material facts in dispute that are supported by any evidence concern Marczeski being followed by "the police." There is no evidence regarding Dittman or Gavitt specifically.

     D.     <u>Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment</u>

I note that the defendants complied with Local Rule 56(b) and provided notice to Marczeski regarding their motion for summary judgment and its potential consequences (doc. # 43). They also provided Marczeski with a copy of Local Rule 56. Although Marczeski confuses the standard in her own motion for summary judgment (arguing that summary judgment should be granted in *her* favor because there *are* genuine issues of material fact), in her Opposition Memorandum she appears to understand the consequences of the defendants' motion. She also points to the evidence that she has marshaled in support of her claims: her log of police activity, calendars, and the notarized statement of a neighbor. I conclude that the defendants provided adequate notice and Marczeski understood the summary judgment process, as required under *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 621 (2d Cir. 1999), and *McPherson v. Coombe*, 174 F.3d 276, 282 (2d Cir. 1999).

**II.    Discussion**

     A.     <u>Standard of Review</u>

          1.     *Summary Judgment*

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion

for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the

light most favorable to the nonmoving party and must resolve all ambiguities and draw all

reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523

(2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of

the nonmoving party"), *cert. denied*, 506 U.S. 965 (1992). When a motion for summary

judgment is properly supported by documentary and testimonial evidence, however, the

nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather

must present significant probative evidence to establish a genuine issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is

summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*,

502 U.S. 849 (1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d

Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not

"significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will
> not defeat an otherwise properly supported motion for summary judgment;
> the requirement is that there be no genuine issue of material fact. As to
> materiality, the substantive law will identify which facts are material. Only
> disputes over facts that might affect the outcome of the suit under the

> governing law will properly preclude the entry of summary judgment.
> Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

### 2.    Pro Se *Litigant*

Because Marczeski is proceeding *pro se*, the court must read her pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal citation omitted). Nevertheless, the "application of this different standard does not relieve plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.* (internal citation omitted). Specifically, to avoid summary judgment, Marczeski "may not rely simply on conclusory allegations or speculation . . . but instead must offer evidence to show that [her] version of the events is not wholly fanciful." *Id.* at 51 (internal citation omitted).

B.     First Amendment Retaliation Claim

Marczeski has alleged that the defendants retaliated against her in violation of the First Amendment by trespassing and by stalking and harassing her because of her filing an earlier lawsuit.

1.     *Required Elements*

To succeed on her First Amendment retaliation claim, Marczeski must show: (1) that the speech or conduct at issue is protected under the First Amendment, (2) that the defendants took adverse action against her, (3) that there was a causal connection between the protected speech or conduct and the adverse action, and (4) that the defendants' actions chilled the exercise of that right. *See Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) (internal citation omitted) (identifying first three requirements); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (noting requirement that the exercise of First Amendment right is "actually chilled").

There is no dispute that Marczeski has asserted an interest protected under the First Amendment. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (the right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances).

2.     *Evidence of Adverse Action by Gavitt and Dittman*

The defendants argue that Marczeski has failed to produce any evidence to show that Gavitt or Dittman took any adverse action against her.  I agree.

Although Marczeski's filings and deposition testimony do describe various actions of police officers and police vehicles that have followed her, she has not submitted evidence from which a reasonable jury could find that Gavitt or Dittman followed or had any contact with her

-8-

following the Kamba action (apart from a conversation with Dittman in which she alleges that he told her that he could get away with lying). None of the calendar or log entries that post-date the Kamba action refer to incidents involving Gavitt or Dittman, and Sligar's statement refers only to "the police."

In her deposition, Marczeski stated that "Mr. Gavitt is a deputy chief officer, and he's the one that takes care of the complaint, which he shoves under the table all the time." (Marczeski Dep. at 71.) This comment does not, however, relate to her sole remaining claim of First Amendment retaliation through stalking, harassment, and trespass. It appears to relate to her past allegations regarding the police department's refusal to act or to allow her to file a "real" complaint. These claims were previously dismissed. *See Marczeski v. Brown, et al.*, No. 3:02cv894 (GLG) (D. Conn. Nov. 21, 2002) (doc. # 21).

Although Marczeski speculates in her pleadings regarding the actions of Dittman and Gavitt, there is no evidence connecting them to the unidentified police officers and vehicles that Marczeski describes in her log and calendar, and that Sligar mentions in her sworn statement. When opposing summary judgment, she may not rely on such speculation, but must offer evidence that her version of events is not "wholly fanciful." *Jorgenson*, 351 F.3d at 51. Marczeski has failed to submit evidence to support her allegations regarding action taken by either of the defendants. Because she has not brought forward evidence of adverse action by Gavitt or Dittman, she has not stated a *prima facie* case of First Amendment retaliation.

3.     *Chilling of Exercise of First Amendment Rights*

The defendants also argue that Marczeski has not produced any evidence to demonstrate that her rights under the First Amendment have been chilled. I agree.

-9-

To satisfy the fourth element of her retaliation claim, Marczeski must show that she was "actually chilled" in the exercise of her rights under the First Amendment as a result of the defendants' conduct.  *See Curley*, 268 F.3d at 73.  In *Curley*, the Court of Appeals noted that "where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."  *Id.*  Similarly, Marczeski has continued to pursue redress in the federal courts.  There is no evidence whatsoever that she has been chilled in her exercise of her First Amendment right to access the courts.  Because she has not brought forward evidence that the exercise of her First Amendment rights was chilled, she has not stated a *prima facie* case of First Amendment retaliation.

    C.    <u>Motion for Disclosure</u>

Marczeski moved for disclosure, requesting that the defendants reveal how they obtained her medical records and diagnoses.  This motion appears to be based on a misunderstanding of the defendants' Motion to Stay Discovery (doc. # 35).  In fact, the defendants sought a stay of discovery because Marczeski repeatedly *refused to release* her medical records.  I also note that Marczeski has filed copies of various medical records as an attachment to her Memorandum in Support of Summary Judgment (doc. # 39).[3]

## IV.    Conclusion

Marczeski's First Amendment retaliation claim fails because she has not produced any evidence that would satisfy each of the required elements of the claim.  Specifically, there is no evidence of adverse action by Gavitt or Dittman and no evidence that her exercise of First

---

[3] The copies of Marczeski's medical and mental health treatment records that have been filed with the court are hereby ordered sealed.

Amendment protected activity (to petition the government for redress of grievances through access to courts) was chilled.

The defendants' Motion for Summary Judgment (doc. # 38) is GRANTED. The plaintiff's Motion for Summary Judgment (doc. # 41) is DENIED. The plaintiff's Motion to Compel (doc. # 36) is DENIED. The clerk shall close this file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 2nd day of February 2005.

    /s/ Stefan R. Underhill
            Stefan R. Underhill
            United States District Judge